The inhabitants of the town of DANBURY *against* the inhabitants of the town of NEW-HAVEN. (a)

The place of a person's birth will be taken to be his place of settlement, until another settlement, derivative or subsequently acquired, be shewn.

If the husband have a settlement in this state, either in his own right or derivative, the wife, on her marriage, takes that settlement.

If the mother have a settlement in this state, either in her own right or derivative, her illegitimate children take that settlement.

Under the statute regarding settlements, as it existed from 1768 to 1772, an inhabitant of another state could not gain a settlement in this state, by one year's residence without being warned to depart.

This was an action of *assumpsit* for monies expended by the plaintiffs, in support of one *Deborah Smith,* and *Griswold, Isabella, Jonathan* and *Juliana,* her minor children; all of whom were alleged to have been, at the time of furnishing such support, paupers of the town of *New-Haven.*

The cause was tried, on the general issue, at *Danbury, September* term, 1824, before *Chapman,* J.

The paupers for whom the expenditure was made, were the wife of one *Samuel Smith,* and her children, begotten since her marriage with him, but not by him, and were therefore illegitimate. *Samuel* was the son of one *John Smith,* who was a native of *Massachusetts,* and who removed into the town of *New-Fairfield* in this state, in the year 1766, and there resided until 1772, when he removed into the town of *Danbury.* From *Danbury* he went to *New-Haven,* and there remained about

(a) This case was argued at an adjourned term in *October,* 1825 ; but as it belonged to the docket of this term, and was postponed merely for want of time, it may, it is thought, without impropriety, be arranged with the cases of this term.

two years; and thence returned to *Danbury*, in 1774, where he resided with his family until after the spring of 1777. During his residence in *Danbury*, *viz.* in the year 1774, *Samuel* was born in that town. In 1777, *John* removed again to *New-Haven*, and there resided until 1798. In 1795, *Samuel* became twenty-one years of age, having resided with his father, until that time; and has never since had any permanent residence in any town in this state. *Deborah*, the wife of *Samuel*, was born in *Danbury;* there she intermarried with him; and there she has ever since resided, separate from him. Upon these facts the counsel for the defendants claimed, and prayed the judge to instruct the jury, that *Deborah Smith* and her children were not settled in *New-Haven*, and were not chargeable to that town; and that therefore, the plaintiffs were not entitled to recover. But the judge instructed the jury, that the plaintiffs were entitled to recover; and the jury returned a verdict for the plaintiffs accordingly. The defendants moved for a new trial, on the ground of a misdirection.

*Daggett* and *N. Smith*, in support of the motion, contended, 1. That *John Smith* never acquired a settlement in *New-Haven;* and of course, could not communicate to *Samuel* a settlement there. *Stat.* 59. 130. 249. 250. 282. revis. 1702. *Stat.* 99. 354. revis. 1750. *Stat.* 102. 384. revis. 1784.

2. That if *John Smith*, and through him *Samuel* and his wife, had a settlement in *New-Haven;* still her settlement, acquired in right of her husband, could not be communicated to her illegitimate children.

*Hamlin* and *Booth*, contra, contended, 1. That *John Smith* gained a settlement in this state, before 1770; and therefore, had a settlement in *New-Haven*, by one year's residence there, when *Samuel Smith* came of age, in 1795. *Stat.* 100. 354. revis. 1750. *Wilson* & al. v. *Hinckley* & al. *Kirby* 199.

2. That the son is settled with his father, during his minority, and until he acquires a settlement in his own right.

3. That the wife takes the settlement of her husband.

4. That if the mother has a settlement in this state, her illegitimate children take that settlement. 1 *Swift's Dig.* 48. *Hebron* v. *Marlborough*, 2 *Conn. Rep.* 19, 20.

BRAINARD, J. The question is as to the legal settlement of *Deborah Smith* and her illegitimate children.

First, where is *Deborah's* legal settlement? The answer is,

where born, and where she has always lived, unless she has acquired another.

It is said, that she acquired a different settlement, by a marriage with *Samuel.* If *Samuel* had a settlement, either in his own right, or derived from his father, that settlement would, on marriage, give a settlement to the wife; and a woman, who gains a settlement by marriage, retains it, notwithstanding the death of her husband, until she gains another; and the settlement of her illegitimate children follows her's.

The next question is, had *Samuel*, at the time of marriage, or at any other time, a settlement of his own, that he could give to his wife. The motion states, that he never acquired any in his own right: if he had a settlement, it must have been derived from his father.

The question then further, is, did *John*, the father, ever acquire a legal settlement in any town in this state, that he could communicate to his son? He resided long enough in *New-Haven* to obtain a settlement, if he had a legal capacity to acquire it. And the point of the case is, whether he had this capacity or not?

He was born in *Massachusetts ;* and moved into *New-Fairfield*, in 1768. If he acquired a settlement there, he was capable of acquiring one in *New-Haven.*

The first statute I find on the subject, is in the revision of 1702, edition of 1718, page 59. which seems to contemplate persons of the character of *John Smith* as foreigners, as strangers or transient persons, incapable of acquiring a settlement by residence. They could have been admitted inhabitants, if " of honest conversation," and if accepted by a major part of the town, but not otherwise; and unless they could have procured certificates of their good characters, would have been liable to be removed to the places whence they came; and in case of return, after such removal, they would have been liable to corporal punishment.

The next statute, page 130. declares, that if such persons, after warning given, do not depart, they shall forfeit a penalty, and if unable to pay, shall suffer corporal punishment.

The next statute, page 250. dispenses with the penalty and punishment, provided the person be not warned to depart within one year; and further, that if warned, and not prosecuted within one year thereafter, he may remain. This statute in substance, with the same proviso, was continued in the revision of 1750. So the case depends on the construction of this

proviso : Whether it was a mere dispensation of pains and penalties ; or whether, in addition, it conferred positive rights.

There does not seem to be any particular or marked distinction in the statutes between transient persons or inhabitants of any other state, and inhabitants of other towns in this state, until the revision of 1784.

Were it not for the statute in that revision, I should have strong doubts of the construction of the proviso I have referred to, whether if not removed within a year, or if warned within the year, and not prosecuted within the year, such transient persons did not gain a settlement, by residence. But I think that statute must be taken in affirmance and explanatory of the law as it was, and of what it had always been understood to be. This statute is : "That no transient person, or inhabitant of any other state, shall gain a legal settlement in any town in this, by dwelling therein, unless admitted, by a major vote of the inhabitants, or by consent of the civil authority and select men, or unless he shall be appointed to, and shall execute, some public office, or has been possessed in fee of real estate in the town, of the value of one hundred pounds." Without some one of these qualifications, such transient person or inhabitant of another state, was always liable to be removed, notwithstanding any length of time he may have been suffered to continue in any town.

It does not appear, that *John Smith* ever had any of these qualifications ; and of course, if my reasoning be correct, he never acquired a legal settlement for himself. If so, he had none to give his children.

I would advise a new trial.

HOSMER, Ch J. and PETERS, J. were of the same opinion ; BRISTOL, J. not judging, being interested.

New trial to be granted.