*Fairfield,*
June, 1837.

Husted
*v.*
Hoyt.

———————◆———————

The town of NEW-HAVEN *against* The town of NEWTOWN :

IN ERROR.

An illegitimate minor child, born in one town of a woman who has since acquired a settlement by marriage in another town, takes the settlement of its mother thus acquired. [By three Judges against two.]

THIS was an action of *assumpsit,* brought by the town of *Newtown* against the town of *New-Haven,* to recover money, expended by the plaintiffs, for the support of a pauper.

The declaration alleged, That on the 24th of *May,* 1826, one *Phebe Weed,* then an inhabitant of *Newtown,* was lawfully married to one *Titus Ward,* then and until his death, which happened on the 1st of *January,* 1829, an inhabitant of *Orange,* in *New-Haven* county ; that previous to her intermarriage with said *Ward,* said *Phebe* had an illegitimate

*Fairfield,*
*June, 1837.*

New-Haven
*v.*
Newtown.

child, *viz. John Weed,* who is still living and under the age of twenty-one years, and who was born in *Newtown ;* that after the death of said *Ward,* said *Phebe* was lawfully married to *Alexander H. Beecher,* an inhabitant of *New-Haven,* who, as well as said *Phebe,* is still living ; that said *John Weed,* after the last-mentioned marriage, from the 9th of *May,* 1833, to the 22nd of *July,* 1836, resided in *Newtown,* wholly destitute of property, and unable, by reason of his tender age, to support himself ; that he was, by reason of the facts aforesaid, during all said time, a settled inhabitant of *New-Haven ;* and that the plaintiffs, during said time, expended for his necessary support, 167 dollars ; of all which the defendants had notice, &c.

To this declaration there was a general demurrer ; and the court adjudged the declaration sufficient. The defendants thereupon, by motion in error, brought the record before this court for revision.

*Hawley,* for the plaintiffs in error, contended, That this pauper having been born in *Newtown,* his mother then being settled there, and having acquired her settlement in *New-Haven* since his birth, by marriage only, is not an inhabitant of *New-Haven.* For although by the law of *Connecticut,* the settlement of a bastard follows that of its mother—in other words, takes that which is her settlement at the time of its birth—yet it does not take, with her, a settlement, which she subsequently acquires by marriage. There is no distinction, in this respect, between legitimate and illegitimate children: both equally follow her in any settlement she subsequently acquires in her own right ; because they are a part of her family, and she is bound to provide for them ; these being the reasons, and the only reasons, on which the rule rests. 2 *Sw. Dig.* 822. *Woodend* v. *Paulspury,* 2 *Ld. Raym.* 1474. *S. C.* 2 *Stra.* 746. 3 *Burn's Just.* 315, 6, 7, 9. *Cumner* v. *Milton,* 2 *Salk.* 528. *Dedham* v. *Natick,* 16 *Mass. Rep.* 135. Legitimate children do not take a settlement acquired by the mother by marriage. 2 *Sw. Dig.* 822. 3 *Burn's Just.* 318. 320. *Foley,* 254. The reasons are, they are no longer part of her family, she being no longer the head of a family—having no family—but being part of her husband's family, to which they do not belong. She is now become " one person with her husband." She is no longer bound, (for she has not the power) to provide for

them ; and her husband is under no obligation to do so. *Tubb & al.* v. *Harrison* & al. 4 *Term Rep.* 118. The same reasons apply equally to illegitimate children. They surely are no more than legitimate children, part of the husband's family. Neither the husband nor the wife is under any more obligation to support her bastards than her legitimate children. There is no imaginable reason, which would carry her bastards with her, when her legitimate children would not follow her ; and the distinction contended for, is not only unsupported by principle or authority, but is absurd.

The cases of *Hebron* v. *Marlborough*, 2 *Conn. Rep.* 18. *Danbury* v. *New-Haven*, 5 *Conn. Rep.* 584. and *Guilford* v. *Oxford*, 9 *Conn. Rep.* 321. do not conflict with this doctrine. They merely declare, in conformity with the well settled law of the state, that a bastard takes that which is the mother's settlement at the time of its birth, in what way soever that settlement may have been acquired ; not that they follow her in a settlement subsequently acquired by marriage. At the utmost, these cases only shew, that the bastard took the settlement which the mother had acquired by marriage, at the time when she became again the head of a family and again liable for their support.

Though settlement laws are *positivi juris*, yet they are founded in reason ; and we ought to be governed by the *English* common law, unless the reasons of that law do not exist here.

*Sherman* and *Dutton*, for the defendants in error, remarked, That the obligation of any town or other community to support its paupers, rests upon positive law. In *England*, an artificial system has been established ; which could not well be, and has not been, transferred, entire, to this country. A derivative settlement, here, stands upon the same ground as an original one. The *English* rules are applicable only to legitimate children : here, we apply the same rules to legitimate and illegitimate children, their circumstances, in other respects, being similar. Artificial distinctions are not, and ought not to be, favoured. The natural relation subsisting between an illegitimate child and its mother, is recognized by our law. *Heath & ux.* v. *White*, 5 *Conn. Rep.* 228. *Brown* v. *Dye*, 2 *Root*, 280.

*Fairfield,*
*June,1837.*

*New-Haven*
*v.*
*Newtown.*

The counsel then contended, 1. That an illegitimate child, in *Connecticut,* takes the settlement of its mother.

2. That the child's settlement follows that of the mother, on her marriage.

In support of these positions, they referred to *Canaan* v. *Salisbury,* 1 *Root,* 155. 1 *Sw. Syst.* 169. *Reeve's Dom. Rel.* 276. 1 *Sw. Dig.* 48. 2 *Sw. Dig.* 821. *Hebron* v. *Marlborough,* 2 *Conn. Rep.* 18. *Hartford* v. *Windsor,* 2 *Conn. Rep.* 355. *Danbury* v. *New-Haven,* 5 *Conn. Rep.* 584. *Woodstock* v. *Hooker,* 6 *Conn. Rep.* 35. *Guilford* v. *Oxford,* 9 *Conn. Rep.* 321. In *New-York,* the same law prevails. *Canajoharie* v. *Johnstown,* 17 *Johns. Rep.* 41.

That the settlement of the child with its mother, does not depend upon her liability for its support, is apparent from the consideration, that a married woman, who has an illegitimate child during the marriage, is not bound to support it ; and yet it takes her settlement at the time of its birth.

WILLIAMS, Ch. J. The sole question submitted, in this case, is, whether the illegitimate infant or minor child of a woman shall take the settlement which the mother acquires by marriage ; or whether such child is to remain, after the mother's change of settlement, in the town where it had its original settlement.

It is strongly urged, that as the mother of a legitimate child acquires no new settlement for her children, by a derivative settlement, *a fortiori* she will not gain a settlement for her illegitimate children. In proof of the first proposition a number of cases are cited, shewing clearly, that in *England,* the mother, by marriage, gains no new settlement for her children. *Wangford* v. *Brandon, Holt,* 574. 3 *Burn's Just.* 319. *Freetown* v. *Taunton,* 16 *Mass. Rep.* 52.

It is curious to trace the hesitation of the judges in allowing settlement by parentage to supersede that of birth, or the conflicts between the claims of nature and society. Even so late as the year 1696, Lord *Holt* doubted whether a father, by the descent of a little land, should gain a settlement for a great family of children. "Shall the descent of a rood of land," says his Lordship, " charge a parish with ten children ? I think they shall follow the parent for nurture and education ; but the parish where they are born shall contribute to their relief."

*Rex* v. *Luckington, Comb.* 280. In the case of *Cumner* v. *Milton*, 2 *Salk.* 528. the sessions having decided according to this opinion, the question came again before the court of *King's Bench ;* and *Powell,* J. said, the children shall not be divided from the father, for that would be unnatural. *Holt,* Ch. J. said, it is hard to remove the child from the father. *Gould,* J. said, it might be removed after the age of seven years, but not before. The Ch. J. said, it was fit to be well considered. It was finally settled, that it was not the place of birth, but the settlement of the father, that makes the settlement of his child ; and if he gained a new settlement, he gained it for his children, as well as for himself. 3 *Salk.* 259. Not long before this, it had been gravely contended, that where the father was *dead*, the place of birth was the place of the child's settlement, "as the child could not be sent to the father, as he was dead." This argument, however, did not prevail. *Comb.* 380. And as late as 1724, it was contended, that when the children had not been actually removed to the last settlement of the father before his death, they must remain settled in the place of their birth ; and according to the report of the case, the court were much divided on that point, though the decision was against the claim. *St. Giles* v. *Eversley Blackwater*, 1 *Stra.* 580. In the case in 3 *Salk.* the court observed, that if the mother of children whose father was dead, married a man settled in another parish, the children should go along with her, not as a part of her family, but as mere children to be maintained at the charge of the parish where they were born ; for this *accidental* settlement of the mother, which was only by her marriage with a second husband, as she had now become one person with him, should not gain a settlement for her children.

Not long after, a widow, with a number of children, gained a settlement in another parish, by renting a house ; and a question was made whether her children's settlement was changed ; and the court held, that it was. And *Parker*, Ch. J. said, there is no distinction between the settlement of children with the father or mother ; for they are as much her's as the father's : and nature obliges her, as much as the father, to provide for them ; so does the law ; and every argument that holds for their settlement with the father, holds as to their settlement with the mother. He adds, however, the reasons why children shall not gain a settlement where the widow gains a

*Litchfield,*
*June, 1837.*

New-Haven
*v.*
Newtown.

*Fairfield,*
*June, 1837.*

*New-Haven*
*v.*
*Newtown.*

settlement only by intermarriage, is, because it is not her fami-ly, but her husband's ; and she cannot give their children any sustenance without the husband's leave.  *St. George* v. *St. Catharine,* 3 *Burn's Just.* 318.   14 *Petersd. Abr.* 438.

In a subsequent case, the court said, if this had been *res in-tegra,* they should have doubted whether a settlement gained under *the head of the family* could be divested, by a deriva-tive one from the *inferior.   Paulsbury* v. *Woodon,* 2 *Stra.* 746.

By such artificial distinctions were families separated.   How far they are to be adopted in this state, as it regards cases di-rectly within them, it is not now necessary to enquire.   The only case found in our books, would seem to shew, that the su-perior court had not followed them.   The mother of an idiot settled in *Middletown,* married a man settled in *East-Hart-ford,* where she resided with this child until her husband's death, and long after ; and it was held, that the mother ac-quired a settlement for her child.   The court say, the mother acquired a settlement, by her marriage, and after her husband's death, in her own right ; and this child was settled with her. *East-Hartford* v. *Middletown,* 1 *Root,* 196.

As it is now well settled in *England,* that a settlement of the mother, acquired by marriage, will not confer a settlement upon her children born before in lawful wedlock, we do not mean to be understood to say, that we should hold otherwise. We sometimes yield to authority where we should not have created the precedent.   But the question before us is with re-spect to the settlement of an *illegitimate* child.   Upon this subject, our whole system differs entirely from that adopted in *Great-Britain.*   The fundamental maxim of the common law, that a bastard is *filius nullius,* is entirely rejected here ; and such a child is here recognized by law, as the child of its mother, with all the rights and duties of a child.   It has been adjudged, that such a child can inherit from the mother.   *Heath* & ux. v. *White,* 5 *Conn. Rep.* 228. 234.   And that such chil-dren of the same mother can inherit from each other.   *Brown* v. *Dye,* 2 *Root,* 280.   Children of this description also take their settlement, not from the place of their birth, as in *Eng-land,* but from the place of their mother's settlement.   1 *Root,* xxix.   *Canaan* v. *Salisbury,* 1 *Root,* 155.   Even when born in another state, of a mother settled in this state, it has been

held, by this court, that an artificial line should not separate them; and that such a child would take its mother's settlement in this state. *Woodstock* v. *Hooker*, 6 *Conn. Rep.* 35. The mother, too, is said to be the natural guardian, and has the right to the custody and controul of such children, and is bound to maintain and educate them. 1 *Sw. Dig.* 47. *Wright* v. *Wright*, 2 *Mass. Rep.* 109. It has also been repeatedly said, by our judges and commentators, that the settlement of such children followed the settlement of their mother. 1 *Sw. Dig.* 48. 2 *Sw. Dig.* 821. *Reeve's Dom. Rel.* 276. *Woodstock* v. *Hooker*, 6 *Conn. Rep.* 36. *Hebron* v. *Marlborough*, 2 *Conn. Rep.* 20. It is claimed, however, that this general expression does not apply to a case of this kind.

Two cases have been decided, by this court, in which it is supposed, that the point now before us has been settled. The defendants claim, that this point did not necessarily arise in those cases; and that they may be distinguished from this case. It becomes necessary, then, to examine those cases with some minuteness.

In the first, *Danbury* v. *New-Haven*, 5 *Conn. Rep.* 584. 586. the paupers were the wife of *Samuel Smith* and her infant illegitimate children, born after marriage. Before her marriage, the woman was settled in *Danbury*, and her children were born there. It was claimed, that *Smith* was settled in *New-Haven;* and therefore, that the woman and her bastard children were settled there also; and of that opinion was the judge at the circuit. Before this court, it was contended, that *Smith* was not an inhabitant of *New-Haven;* but if he was, and there gained a settlement for his wife, it was not communicated to her illegitimate children. *Brainard*, J., in giving the opinion of the court, considers both these questions, and says, that *Smith's* settlement would become that of his wife, and the settlement of her illegitimate children follows hers. He goes on and gives an opinion upon the other point, that *Smith* was not an inhabitant of *New-Haven;* so that the first opinion was not absolutely necessary to the decision of the case; but as it was a point arising in the case, and had been fully argued, and upon which an opinion had been expressed at the circuit, it was certainly proper, if the court had formed an opinion, that it should be made known. If it be said, that the oth-

er judges might have concurred in the result, though not upon that point, it will not be believed by those who remember the learned judge who gave the opinion in that case, that he ever substituted his own opinion for that of the court ; and not long after, the late Ch. J. *Hosmer,* who well knew what was decided in this case, says, that it is a direct determination that, by our law, a derivative settlement of a mother acquired by marriage, is communicated to her illegitimate children. *Guilford* v. *Oxford,* 9 *Conn. Rep.* 322. 330. We have then the direct opinion of a majority of the court, and have no reason to believe, that the others differed from them. Something is said in that opinion, from which it is inferred, that *Smith* was then dead. We do not see that if it was so, the fact would have been of any importance. But it is not so stated in the case ; and we are informed, that the fact was not so.

In the recent case of *Guilford* v. *Oxford,* one of the paupers was married to an inhabitant of *Oxford ;* and after marriage, she had an illegitimate child, and was divorced from her husband soon after. The points presented were, whether the circumstances disclosed precluded the mother from taking the settlement of the husband ; and if not, whether the settlement of the child followed this derivative settlement of the mother. These points were both distinctly made, and distinctly decided ; and necessarily so, because it having been settled, that the mother was settled with her husband in *Oxford,* it was absolutely necessary to decide whether the settlement of this bastard child followed the settlement of the mother thus acquired, or whether it was settled in the place of the mother's original settlement. The Chief Justice treats this question as settled in the above-mentioned case ; and the only reason to be assigned why this point was not more discussed by counsel, probably was, that it was understood to have been settled in that case. It would seem, therefore, as if this question was settled in *Connecticut.*

It is said, however, that in both these cases, the children were born after the marriage of the mother ; of course, after her new settlement was fixed. That circumstance is not alluded to, either by counsel or the court, nor in any case that we have seen, as affecting the decision ; but the general question was, whether the settlement of the mother acquired by marriage, was to have the same effect upon the settlement of the child as if it

had been acquired in some other way.   And in giving his opinion in one of the cases above cited, the Chief Justice alludes to a case in *New-York* under their statute, where the mother acquired a settlement by marriage, after the birth of the child, as exactly in accordance with our own decisions, and as thus testifying to the justice and convenience of the law as here established.   9 *Conn. Rep.* 330.   Besides, the reasons given why the marriage of the mother does not give a settlement to the child,—as that is not her family, and she cannot be compelled to support it,—are equally applicable to the child that is born after marriage as one born before.

*Fairfield,*
*June, 1837.*

New-Haven
*v.*
Newtown.

Another distinction was claimed between the cases decided in this court, and the one before us, that there was a separation between husband and wife, and thus she became the head of the family.   In the first case, it appears, that there was a voluntary separation ; in the last, the fact may have been so, but it does not appear ; nor is that fact alluded to, in either case, as important to the result.

We are, then, brought to the question, whether we shall be governed by the decisions of this court, repeatedly made upon the point of the effect of the derivative settlement of the mother upon the settlement of her bastard child ; or whether we shall adopt the *English* decisions in the case of legitimate children.

When we consider the harshness of the sentence, which banishes a child from its mother, its natural guardian, its only parent, and sometimes its only friend, we feel that we are not required to overturn repeated decisions of our highest court, lest the symmetry of this artificial system regarding settlements, should be destroyed.   We incline to say, with Ch. J. *Parker,* " that every argument that holds for the settlement with the father, holds as to the settlement of children with their mother," unless indeed that of support during the life of the husband.   But how many duties beside that of support, arise from the relation of parent and child !   And in cases like this, the mother has a double share of responsibility.

We are, therefore, of opinion, that there is no error in the judgment of the superior court.

In this opinion BISSELL and HUNTINGTON, Js., concurred.

*Fairfield,*
*June, 1837.*

New-Haven
*v.*
Newtown.

WAITE, J.  By the common law, if a widow having a family of minor children living with her, acquire a settlement in her own right, after her husband's death, that settlement is communicated to her children.  But it is not so where the subsequent settlement is acquired by marriage.  And the reason is, that her children by a former husband, do not become a part of her second husband's family, and he is under no legal obligation to support them.  Such, by repeated decisions, has become the well settled law of *England.*  3 *Burn's Just.* 27. *Woodend* v. *Paulspury,* 2 *Ld. Raym.* 1473.  *S. C.* 2 *Stra.* 746.  3 *Salk.* 259.  1 *Doug.* 10.  note.

The same doctrine has been recognized in *Massachusetts,* as a part of their common law.  *Freetown* v. *Taunton,* 16 *Mass. Rep.* 52.  And the same law, it is believed, prevails in *Connecticut.*  2 *Swift's Dig.* 822.  The same reasons exist for it.  The husband here is under no more obligation to support his wife's children by a former husband, than in *England.*

An illegitimate child, by the common law, is considered, in many respects, *nullius filius.*  He can neither inherit any property, nor derive any settlement from his mother.  In general, his settlement is in the place of his birth.  Not so in *Connecticut.*  He is treated, in all respects, as the child of his mother.  He is capable of inheriting her estate, and, at his birth, takes the settlement of his mother, if she has one in this state, whether that settlement was acquired by birth, by marriage, or in any other manner.  *Hebron* v. *Marlborough,* 2 *Conn. Rep.* 18.  *Danbury* v. *New-Haven,* 5 *Conn. Rep.* 584.  *Guilford* v. *Oxford,* 9 *Conn. Rep.* 321.  *Heath* v. *White,* 5 *Conn. Rep.* 228.  He is placed in the same situation, so far as regards the mother, as her legitimate children.  She is under the same obligations to support them.  Whenever she acquires a settlement in her own right, if he is a minor and a part of her family, his settlement follows hers.  If, however, she marries, he no more becomes a part of her husband's family than her legitimate children; and the husband is under no obligation to support him.  In my opinion, his settlement is no more affected, by her marriage, than that of her legitimate children.  In this respect, they all stand precisely in the same situation.  The same reasons operate in the one case as in the other.

But it is said, that it has been repeatedly held, as the law of *Connecticut*, that his settlement *follows* his mother's; and that that rule is applicable to this case. It has been often decided in this court, that such child, *at its birth*, takes the settlement which the mother has at that time, however that settlement may have been acquired. Beyond this, it is believed, no decision has ever gone. Thus, in *Hebron* v. *Marlborough*, the question was, where was the settlement of an illegitimate child, when born? The then Chief Justice, in giving the opinion of the court, said, "in this state, the rule has been adopted, that where the mother has a settlement, the bastard follows it." He was speaking of the settlement at the time of the birth. He did not say, nor, as I apprehend, mean to say, that every settlement acquired by the mother, would be communicated to the bastard. If so, then a bastard, after he has arrived at full age, and an illegitimate daughter, after her marriage, must follow the mother's settlement; a doctrine for which no one will contend. The remark of the Judge must be understood with reference to the subject matter of the suit, and not as intending to advance a rule without any exception or qualification. The general principle was laid down; and, as applied to that case, it was perfectly correct. The exceptions and qualifications were not specified, because the case did not require it.

So, in *Danbury* v. *New-Haven*, the question was, where the illegitimate children of a married woman were settled, at the time of their birth. The court said, "that a married woman, who gains a settlement by marriage, retains it, notwithstanding the death of her husband, until she gains another; and the settlement of her illegitimate children follows hers." This was said in reference to the settlement of her children, born *after* she had acquired a settlement by marriage. All that the court decided, was, that the children took the settlement, which their mother had, when they were born, although that settlement had been acquired by marriage.

Again, in *Guilford* v. *Oxford*, the same question arose, and the same doctrine was recognized. In no one of these cases, nor in any other which I find, has the question presented in this case ever been decided. It comes, for the first time, before this court; and I can discover nothing in the previous cases to prevent a decision upon principle, and in conformity with those well settled rules that govern in cases of legitimate children. A

*Fairfield,*
June, 1837.

New-Haven
*v.*
Newtown.

*Fairfield,*
*June, 1837.*

New-Haven
*v.*
Newtown.

departure from long established rules of the common law, where no sufficient reason exists for such departure, cannot, in my opinion, be justified. It tends to introduce confusion into our system, and embarrasses those, who make themselves acquainted with the common law, for the purpose of understanding ours.

If the pauper in this case, were legitimate, it is perfectly clear, that by the common law of *England*, and, as I think, by our law also, she would not take her mother's settlement acquired by marriage, subsequent to the birth of the pauper. I can see no reason whatever, for any distinction between our law and the *English* law, upon this subject ; nor any reason for making a distinction, in this state, between the settlement of a legitimate and an illegitimate child, in the case under consideration. The pauper's settlement, in my opinion, ought to be affected, by a change in the mother's settlement, in precisely the same manner, and to the same extent, that it would be, if the pauper were legitimate, and no farther.

For these reasons, I think the judgment in the court below erroneous.

CHURCH, J. concurred in this opinion.

Judgment to be affirmed.