The town of Oxford *against* the town of Bethany :

IN ERROR.

Where a portion of the territory of one town, is, by an act of the legislature, annexed to another town, a person having a settlement in the former town, at the time of such annexation, on the territory annexed, has his settlement transferred, with the territory, to the latter town.

And it makes no difference as to the transfer of such person's settlement, if he was, at the time of the annexation, residing at the poor-house for support, not on the territory annexed.

Where the act annexing a portion of the town of O. to B., provided, that B. should support such part of the actual paupers of the town of O. as the list of the territory set off to B., bore to the whole list of O. ; it was held, that the object of this provision was, to divide the expense of supporting such paupers, but not to affect their settlement.

Nor would an agreement between the towns, that one portion of the paupers

New-Haven,
July, 1842.

Oxford
*v.*
Bethany.

should be supported by one town, and the residue, by the other town, though binding upon the parties as to the support in question, affect the settlement of the paupers.

Where the town of *B.*, to which a portion of the town of *O.* had been annexed, agreed with *O.*, to take upon itself, for support, *L.*, a pauper of *O.*, having a settlement on the territory transferred, so long as he should live and need help, binding him upon the town of *B.*, for every liability to which towns are subject on account of paupers; and *L.* afterwards married *M.*, who needed support; it was held, that though such agreement did not change the settlement of *L.*, yet as *L's* settlement was in *B.*, by virtue of the annexation, and the agreement was not inconsistent therewith, *B.* had no claim upon *O.* for the support of *M.*

THIS was an action of *assumpsit*, brought originally, by the town of *Bethany*, against the town of *Oxford*, for the support of *Marietta Lines*, a pauper.

The cause was tried in the county court of *New-Haven* county, *November* term, 1840.

The General Assembly, at its session in *May* 1839, passed an act or resolution, annexing part of the territory of the town of *Oxford* to the town of *Bethany*. In relation to the support of paupers, it was thereby provided as follows: "And said *Bethany* shall assume to support, and shall take and support, such part of the actual paupers of said town of *Oxford*, of date *May* 23d, 1839, as the grand list of said territory so set off, proportioned to the whole grand list of said *Oxford* of 1838, bears to the whole grand list of said *Oxford*. And in all other respects, the said territory and the inhabitants thereof, shall constitute a part of said *Bethany*, with all its privileges and liabilities. And in case any person or persons shall hereafter become poor, and would belong to said town of *Oxford* to support, by virtue of birth, residence or in any other manner, within said territory, such person or persons shall be maintained, by said town of *Bethany*, to which they shall, by this act, belong, whether present within the limits thereof, or not." *Resolves of* 1839, *p.* 75, 6.

At the time this act was passed, *Marietta Lines*, then *Marietta Johnson*, the person for whose support this action was brought, was, and until her inter-marriage with *Zebulon Lines*, continued to be, a pauper and an inhabitant of the town of *Oxford*. *Zebulon Lines*, at this time, was, and for some years previous thereto had been, an inhabitant of the town of *Oxford*, residing as a pauper in the poor-house in that part of the

town of *Oxford* which was not set off to the town of *Bethany.* There he continued to reside and to be supported as a pauper, by the town of *Oxford*, until after the making of the agreement about to be stated between the select-men of the towns of *Bethany* and *Oxford* respectively.

It was admitted, that the plaintiffs had furnished necessary support to said *Marietta*, previous to the bringing of this suit; and that they were entitled to recover therefor, unless her settlement had been changed, by her marriage to *Zebulon Lines*, which was prior to the time of furnishing such support.

The defendants claimed, that the plaintiffs were liable to support her, prior to and at the time, when the support in question was furnished, inasmuch as she had become an inhabitant of the town of *Bethany*. To establish this claim, the defendants offered in evidence said act or resolution of the General Assembly, and in connexion therewith a vote of the town of *Bethany*, passed at a meeting of the inhabitants of that town, legally warned and held on the 7th of *October* 1839, authorising their select-men to negotiate with the select-men of *Oxford*, or such other person or persons as that town might appoint, and to make a full and final settlement of all matters pending between said towns, relating to a division of town paupers; and the following agreement between the select-men of said towns: "We the subscribers, select-men of the town of *Bethany*, having been duly appointed, authorised and directed, by said town, to make a distribution of the town paupers of the town of *Oxford*, in pursuance of a resolution passed by the legislature of the state of *Connecticut*, holden at *Hartford*, on the first *Wednesday* of *May*, 1839, did, on the 19th of *October* 1839, meet at the inn of *Stephen Street* in *Oxford*, and then and there, with said *Oxford* select-men, did agree to take upon the town of *Bethany*, for support and maintenance, so long as he shall live and want help, *Zebulon Lines*, and no other person, he being a pauper of said town of *Oxford ;* and said *Zebulon Lines*, we hereby bind upon said town of *Bethany*, for every liability, for which towns are liable, on account of paupers; and we guaranty, on behalf of said *Bethany*, to save said *Oxford* forever harmless, on account of said *Lines:* and we further agree to pay said town of *Oxford*, out of the treasury of the

town of *Bethany*, the sum of 50 dollars; and this we bind ourselves to do and perform, as the full and just proportion of the liability of *Bethany*, to take of the paupers of *Oxford*. Dated *Oxford, October* 19th, 1839." [Signed by *Theophilus Smith* and others, select-men of *Bethany*.]

"We, the undersigned, select-men of the town of *Oxford*, having received of the select-men of the town of *Bethany*, their guaranty for the support of *Zebulon Lines*, a pauper of the town of *Oxford*, and to save the town of *Oxford* forever harmless, on account of said *Lines;* and also a promissory note for the sum of 50 dollars from said *Bethany* to said *Oxford;* do hereby forever discharge said town of *Bethany* from all liability on the score of dividing town paupers with the town of *Oxford*, pursuant to the terms embraced in a resolution of the General Assembly, holden on the first *Wednesday* of *May* 1839, transferring a portion of the town of *Oxford* to the town of *Bethany*, except the payment of said note. *Oxford, October* 19th, 1839." [Signed by *Nathan I. Wilcoxson* and others, select-men of *Oxford*.]

In connexion with these documents, the defendants also offered proof of the marriage of said *Marietta* to said *Zebulon Lines*, on the 17th of *December*, 1839. The defendants further offered evidence to prove, that *Zebulon Lines* originally acquired his settlement in the town of *Oxford*, by a residence of more than six years, on that portion of the town, which was, by the General Assembly, annexed to the town of *Bethany;* and that although he had, as a pauper, been removed to and was residing in, another part of the town of *Oxford*, where he was supported as a pauper, in the poor-house, prior to and at the time of passing said resolution, yet he had not resided in such other part of the town, for a period long enough to have originally acquired a settlement therein. The defendants thereupon insisted, that the evidence so offered, was admissible to prove, that *Zebulon Lines* was, within the meaning of said resolution, an inhabitant of that part of the territory of *Oxford*, which was transferred to *Bethany;* and that he was, by force of said resolution, transferred therewith, and became thereby a settled inhabitant of the town of *Bethany;* and by his subsequent marriage with said *Marietta*, she became an inhabitant of that town.

To the admission of all this evidence, the plaintiffs objected ; and the court rejected it.

The jury thereupon returned a verdict for the plaintiffs, on which judgment was rendered in their favour. The defendants, having filed a bill of exceptions, brought a writ of error, in the superior court ; which was reserved for the advice of this court.

*R. I. Ingersoll* and *Blackman,* for the plaintiffs in error, contended, 1. That from the facts admitted and offered to be proved by the defendants, *Zebulon Lines,* the husband of the pauper for whose support this action is brought, was an inhabitant of the territory which was annexed to the town of *Bethany.* He had resided there six years, supporting himself; which made him an inhabitant, as much as if he had been born there.

2. That the inhabitant of a territory, made into a new town, or annexed to another town, remains an inhabitant of the same territory in its new relation. *Great-Barrington* v. *Lancaster,* 14 *Mass. Rep.* 253, 256. *Vernon* v. *East-Hartford,* 3 *Conn. Rep.* 475. *Simsbury* v. *Hartford,* 14 *Conn. Rep.* 192. The resolution also declares explicitly, that " the said territory, and the inhabitants thereof, shall constitute a part of said *Bethany,* with all its privileges and liabilities."

3. That the residence of *Lines* in the poor-house, which was not on the territory annexed to *Bethany,* for the purpose of receiving support as a pauper, did not prevent his being transferred with the territory. His domicil was still on the territory. *Mansfield* v. *Granby,* 1 *Root,* 179. *Vernon* v. *East-Hartford,* 3 *Conn. Rep.* 475. His temporary absence from the territory at the poor-house, to be supported, could not affect this question, any more than if, at the time of the annexation, he had broken his leg without the limits, and had remained there to have it set and taken care of, or had been in the State Hospital at *New-Haven,* or in the Retreat for the Insane at *Hartford,* or in the county prison for debt.

4. That by the arrangement made between the towns, under the resolution, *Bethany* not only assumed the support of *Zebulon Lines,* but " every liability for which towns are liable for and on account of paupers." Now, if a town is liable for the support of the husband, is it not, of course, liable for the support of his wife, if she comes to want?

5. That from the provision made and the rule given, by the legislature, for apportioning the burdens between the two towns, it is manifest that the intention was, to put upon each the same kind of burden. But upon the construction now contended for by *Bethany,* an *Oxford* pauper marrying a *Bethany* woman transfers her settlement and their joint progeny to *Oxford;* whereas a *Bethany* pauper marrying an *Oxford* woman, leaves her a pauper of *Oxford* still. A construction so palpably inequitable, will not be sanctioned by this court.

*Baldwin,* for the defendants in error, remarked, that the resolution of 1839 contemplated three classes of persons: First, residents on the territory. Their settlement was changed. Secondly, paupers actually supported by *Oxford.* These were to be subjects of an equitable arrangement for their future support, on the principle of a rateable division of existing burdens. Such a division might obligate *Bethany* to support one member of a family of paupers, without in any way affecting the legal settlement of the person so supported. Thirdly, future paupers, who were to fall upon that town to which the territory on which their settlement was acquired, belonged. He then contended,

1. That *Lines,* being an actual pauper resident in and supported by the old town of *Oxford,* his settlement was not changed by the resolution.

2. That he was regarded, by both towns, in their arrangement, as a pauper of *Oxford.*

3. That if the settlement of *Lines* was not changed, by the resolution, the agreement did not change it. It only charged *Bethany* with his support. *Brewster* v. *Harwich,* 4 *Mass. Rep.* 278. *Westborough* v. *Franklin,* 15 *Mass. Rep.* 254. *West-Boylston* v. *Boylston,* 15 *Mass. Rep.* 261. *Shrewsbury* v. *Boylston,* 1 *Pick.* 105. *Fitchburgh* v. *Westminster* 1 *Pick.* 144. The legislature did not delegate to the two towns the power of changing the legal settlement of any person.

4. That if the legal settlement of *Lines* was not changed, though *Bethany* may have become chargeable with the expense of supporting him, the settlement of his wife remains in *Oxford,* and that town must take care of her.

WAITE, J. If *Zebulon Lines*, at the time of the annexation of a part of the town of *Oxford* to *Bethany*, had his settlement in that part, his settlement would continue in it; and consequently, he would be transferred with it to *Bethany*. *Simsbury* v. *Hartford*, 14 *Conn. Rep.* 192. *Vernon* v. *East-Hartford*, 3 *Conn. Rep.* 475.

The effect, so far as his settlement is concerned, will be precisely the same, whether he was then actually residing on the territory annexed to *Bethany*, or in some other place. *Simsbury* v. *Hartford. Mansfield* v. *Granby*, 1 *Root*, 179. His residence, therefore, in the poor-house of *Oxford*, had no effect whatever upon his settlement, and did not prevent his acquiring a settlement in *Bethany*, in the same manner as any other person living upon the territory annexed to that town.

*Marietta Lines*, the pauper, upon her marriage with *Zebulon Lines*, acquired his settlement; and consequently, became settled with him in the town of *Bethany*. *Danbury* v. *New Haven*, 5 *Conn. Rep.* 584. *Hebron* v. *Colchester*, 5 *Day*, 169.

These are principles familiar and well settled in this state.

According to the facts, as claimed by the town of *Oxford*, it is very clear, that the pauper, when the supplies were furnished, belonged to *Bethany*; and that town was liable for her support, unless there be something in the act of the General Assembly, which prevents the operation of the rules of the common law, as recognized in this state.

The principal clause relied upon, as favouring such a construction, is that which provides, that *Bethany* shall support such part of the actual paupers of the town of *Oxford* as the list of the territory set off to *Bethany*, bears to the whole list of *Oxford*. The object of that provision evidently was, to divide the *expense* of supporting those who were then paupers according to the lists of the two parts of *Oxford*,—but not to destroy or change their settlement. The legislature, we think, could not have intended to authorise the parties to make a *change in the settlement* of any person, at their pleasure. To justify such a construction, the language ought to be more plain and explicit. The parties might agree, that one portion of the paupers should be supported by one town, and the remainder by the other town. This arrangement would

affect the liability of the parties,—but not the settlement of

the paupers.

Suppose a family, at the time of the division of *Oxford*, were residing in a part remote from *Bethany*, and, by reason of sickness, requiring aid from the town;—would that circumstance destroy the settlement of the family, and justify a removal to *Bethany*, after they had recovered from their sickness, and ceased to require aid? Again, suppose they were actually residing in the territory annexed to *Bethany*;— would the circumstance of their needing assistance, when it was so annexed, justify a removal to another place? Such, we think, could not have been the design of the legislature.

But even if the parties possessed the power of changing the *settlement* of paupers, it has not been done, in this case. *Lines*, the husband of the pauper, by an agreement of the parties, was taken by *Bethany*, and was to be supported by that town in which he had his settlement.

This construction of the act appears to be in conformity with the provisions in the last clause. It is there declared, that persons having in any manner acquired a settlement in the territory annexed to *Bethany*, and thereafter becoming poor, should be supported by that town, whether then residing in that territory or elsewhere.

The legislature could not have intended to make a distinction between the settlement of such persons as were then poor, and such as might thereafter become such: nor that all those who were then poor, should have their settlement in *Oxford*, even if their settlement was in the part annexed to *Bethany*. In our opinion, the provisions of the act are in conformity with those of our common law relating to the settlement of inhabitants upon the division of towns.

The testimony, therefore, offered by the defendants in the court below, was improperly rejected by the court; and consequently, there is error in the proceedings of the county court.

In this opinion the other Judges concurred, excepting CHURCH, J., who was not present when the case was argued.

Judgment reversed.