THE TOWN OF WINDHAM *vs.* THE TOWN OF LEBANON.

The statute (Gen. Statutes, p. 199, sec. 5,) provides, with regard to the
right of one town to recover of another for the support of a pauper
of the latter by the former, that the selectmen of the claimant town
shall give notice to those of the other of the condition of the pauper,
"stating his name." Held that a notice describing the paupers as
"Austin Seymour (colored) and wife, and four children aged from
ten years down to an infant," was sufficient not only for the parents
but for the children.

There is nothing technical in the statute. It means that definite informa-
tion as to the pauper shall be given, and that is all that is intended by
its language.

Mere commorancy does not give a settlement to a person not already an
inhabitant of the state.

An illegitimate child takes the settlement of its mother if she has one in
this state.

The place of a person's birth is *primâ facie* the place of his settlement.

A wife takes the settlement of her husband, if he has any; if he has none
she retains her own.

Proof that a woman had married is not sufficient to create a presumption
of a change of her settlement; it must also be shown that the husband
had a settlement.

ACTION to recover for moneys expended in the support
of paupers claimed to belong to the defendant town; brought
to the Superior Court in Windham County and tried to the
jury before *Carpenter*, *J.* Verdict for the plaintiffs and
appeal by the defendants. The case is sufficiently stated
in the opinion.

*J. J Penrose*, and *H. Clark*, for the appellants.

. *J. L. Hunter* and *J. M. Hall*, for the appellees.

GRANGER, J. . The whole subject of the support of pau-
pers and the liability of towns therefor is regulated by
statute. Various acts have been passed upon this subject,
and the one more especially relating to this case is as fol-
lows:—" The selectmen of every town in which a pauper
belonging to another town is chargeable shall give notice of

his condition to such other town within, &c., stating the name of the pauper and that he is chargeable, &c." Gen. Statutes, p. 199. The main question in this case is, whether the notice sent by the selectmen of Windham to the select-men of Lebanon was sufficient. The notice was as follows:

"Willimantic, Conn., May 3d, 1882.

"Selectmen of town of Lebanon. Dear Sirs : This is to notify you that Austin Seymour (colored), and wife, and four children, aged from ten years down to an infant, inhabitants of the town of Lebanon, are in this town on expense, and we shall look to the town of Lebanon for all lawful charges for their support. We supposed that Austin Seymour, a bastard child of Emily Barber, belonged to the town of Hebron, and consequently brought suit against that town, but the court decided that the family belonged to Lebanon, where the mother, Emily Barber, lived and belonged (in Exeter), and not in Hebron, as there was plenty of evidence to show. We would respectfully request that you remove this family to your town."—[Signed by the Selectmen.]

Counsel for the defendants objected to the reception of this evidence, except as to the pauper Austin Seymour, whose name is mentioned therein; but the court admitted it subject to the objection. The defendants claimed, and requested the court to charge the jury, that under the notice no recovery could be had against the defendants in any event except for the support of the pauper whose name is given in this notice. The court did not so charge the jury, but charged them that they might regard the notice sufficient in respect to all the children as well as to the parents.

Was this charge correct? We are of opinion that it was so. What was the object of this provision of the statute, that the notice shall give the name of the pauper? Clearly only to inform the town charged who the person or persons were needing support; to give the selectmen of such town information that would be readily understood, that a certain person or persons were paupers in the claimant town on expense, and that the latter town would

look to the former for reimbursement, and 'that the town charged might be able to ascertain the identity of the pauper or paupers. If the pauper is an infant and has no name, then a notice naming the parents and stating the fact that the infant has no name is sufficient. And there seems to be no good reason why the same rule should not apply in the case of an adult pauper whose name was unknown to the complainant town. A reasonably accurate description of the pauper, stating that his name was unknown, might we think be sufficient. But however this may be, all the decisions of this court on the subject go to show that technical accuracy in this notice is not required. In the case of *Washington* v. *Kent*, 38 Conn., 249, the notice was similar to that in this case. It described the paupers as "Frances Payne, Anna Payne, and an infant child, wife and children of Arthur Payne." The Chief Justice in giving the opinion of the court says :—"No objection is made to the description of either of the paupers, with the exception of that given of the infant child ; and in relation to that the objection consists in the fact that the name of the child was not given. It is claimed that inasmuch as the statute requires the name to be given it excludes impliedly any other description however specific." This is in substance the objection in the present case; the defendants insisting that no other description will answer the terms of the statute and that the precise name of the paupers must be given. The court say further :—"There is nothing technical in the statute. It means that definite information as to the person shall be given, and that is all that is intended by the language. We think the description was sufficient, even without the parol evidence which was offered by the plaintiffs." The parol evidence was that the infant child had no name.

If what the court says in that case is to stand as good law, and we think it is so, it disposes of the main question in this case. It cannot be maintained for a moment that the defendant town from the notice given did not have "definite information as to the persons" claimed to be paupers, on expense and chargeable to that town. Indeed

it is not claimed that the latter did not fully and clearly understand who the persons were from the notice given, and it would be an imputation upon the intelligence of its selectmen to suppose otherwise. In the first place, the name of the head of the family is correctly given—Austin Seymour—and the woman is described as his wife. Not only so, but a distinguishing descriptive term is added in the word "colored," by which it is universally understood that the person so designated is of the African race. Such families are exceptional; they are not the common inhabitants of the state; but few comparatively are to be found in any of our country towns. We refer to this merely for the purpose of showing that the family must have been well known and understood by the selectmen of Hebron. They are also informed of the number and ages of the children; also that a suit had been tried in court with regard to the same family, a matter of general notoriety. There can be no doubt upon the whole notice that the defendants had sufficiently "definite information" from it of the persons that the plaintiffs claimed were paupers and chargeable to the defendant town.

As to the other question made relating to the settlement of Emily Barber, we think there was no error in the manner in which it was presented by the court. It was admitted that Austin Seymour was the illegitimate son of Emily Barber, and was born in Middletown in this state about the year 1835, and it appeared that Emily Barber was then temporarily in that town; and the plaintiffs claimed and offered evidence that she was born in Lebanon about the year 1818. The defendants claimed and offered evidence to show that she was not born in Lebanon, and that Luther Barber her father resided continuously in the town of Hebron after her birth and during her minority, for more than six years. But the record states that neither party offered evidence to show, and that it did not appear otherwise than as above stated, that Luther Barber ever had any settlement in any town in this state. The defendants claimed that if the jury should find that Luther Barber

resided continuously for more than six years after the birth of Emily in the town of Hebron, the plaintiffs could not recover, and asked the court so to charge. The plaintiffs claimed that Austin Seymour, being illegitimate, took the settlement of his mother, if she had one in this state; and that the place of the birth of the mother, being shown by the plaintiffs, was *primâ facie* the place of the mother's settlement, and that this *primâ facie* evidence.of settlement must be overcome by countervailing evidence or the jury on this point must find for the plaintiffs. The court instructed the jury in accordance with the claim of the plaintiffs. This instruction was undoubtedly correct. The law is well-settled in this state that an illegitimate child takes the settlement of its mother if she has one in this state, and also that the place of a person's birth is *primâ facie* the place of his settlement. *Sterling* v. *Plainfield*, 4 Conn., 114. The place of settlement of Emily Barber, the mother of Austin Seymour, the illegitimate pauper, having been proved to be in Lebanon, the defendant town, in 1818, it was incumbent on the defendant to show that in some of the statutory modes this settlement had been changed. This they attempted to do by showing that Luther Barber, the father of Emily, acquired a settlement in the town of Hebron in this state, and that this settlement was conferred upon Emily, who was then a minor. Their evidence on this point, however, went only to the extent of showing that Luther Barber resided six years continuously in the town of Hebron during Emily's minority. But mere commorancy does not give a settlement to a person not already an inhabitant of the state. Gen. Statutes, p. 195, sec. 3; *Somers* v. *Barkhamsted*, 1 Root, 263, 398; *Danbury* v. *New Haven*, 5 Conn., 584. And it does not appear that Luther Barber ever had any settlement in any town of this state.

The same difficulty exists with regard to the claim of the defendants as to the effect of the marriage of Emily Barber in the summer after Austin Seymour was born—a fact which came out on the cross-examination of Lyman Barber, a brother of Emily and one of the plaintiffs' witnesses, who

was introduced to prove that Emily was born in Lebanon. The only fact stated is that she married a man by the name of John Weston. It did not appear that he ever had a settlement in any town in this state. This was clearly insufficient to effect a change in the settlement of Emily Barber.

The rule is that the wife takes the settlement of the husband if he has any; if not, she retains her own. *Danbury* v. *New Haven*, 5 Conn., 584; *Lebanon* v. *Hebron*, 6 id., 45.

There is no error and the appeal is dismissed.

In this opinion the other judges concurred.