## TOWN OF MANCHESTER *v.* TOWN OF SPRINGFIELD.

While the act of 1801, relating to legal settlement, was in force, the rule of the common law was in force, that an illegitimate child has its settlement where born, and cannot gain a derivative settlement from its mother.

Under the act of 1801, a woman living with a man as his wife, under a void marriage, was not included in a warning of the man and his family; and she might gain a settlement by residence.

An illegitimate child, living in a town with its mother, until four years of age, did not, under the act of 1801, gain a settlement by residence, though not warned out.

THIS was an appeal from an order of removal, from Manchester to Springfield, of Martha M. Sheldon and her seven minor children, and came on to be tried on issue joined to the defendant's plea, that the last legal settlement of the said Martha M. and her said seven children, was not in the town of Springfield.

On trial of the cause in the county court it appeared,—

that, on the 19th day of June, 1828, John Sheldon and the said Martha M., were duly joined in marriage, and that the said seven minor children, were children of the said John and Martha M. by that marriage ; that the said John died at Manchester, February 11, 1842. It further appeared, that Israel Sheldon, father of said John, was duly married to one Lucy Kibby of Charlotte, January 26, 1805 ; that on the 4th day of January, 1807, he was married to one Charlotte Perry of Springfield, while the said Lucy was living and undivorced from him ; that the said Israel's legal settlement, at the time of his marriage with said Charlotte Perry, and the birth of the said John Sheldon was in Charlotte in this state, and they lived together, for seven years, as husband and wife, and had four children ; that the said Lucy remained undivorced from the said Israel, until the year 1816, and that she was still living ; that the said Charlotte was the daughter of Joseph Perry, who moved to Springfield in 1798, at which time the said Charlotte was seven years of age, and the said Charlotte resided with him, in Springfield, until her marriage to the said Israel, in 1807 ; that, in June, 1810, the said Israel and Charlotte moved to Manchester and lived there together, and about the middle of September, 1810, the said Charlotte went from Manchester to Springfield on a visit to her friends, and while there, to wit, on the 17th day of October, 1810, the said John Sheldon, her son, was born ; and that, in the fore part of December thereafter, the said Charlotte, with the said John, returned to Manchester, and continued to reside there with the said Israel for nearly four years.

The plaintiff offered in evidence a process against Israel Sheldon and family, warning them from the town of Manchester, dated September 4, 1810, to the introduction of which the defendant objected, and the court rejected the same ; to which decision the plaintiff excepted.

Upon the above facts, the court decided that the last place of legal settlement of the said Martha M. Sheldon and her seven minor children, was in said town of Springfield, and rendered judgment for the said town of Manchester to recover of the town of Springfield their costs ; to which decision of the court, the defendant excepted.

*J. S. Robinson*, for defendant.

The paupers removed are the wife and children of John Sheldon, who was the illegitimate child of Charlotte Perry. He was born in Springfield, in 1810, and his mother, afterwards, acquired a settlement in Manchester, while the act of 1801 was in force.

The question to be decided is, where was John Sheldon's legal settlement at the time his family became chargeable ?

I. By the common law, a bastard's place of birth determines the place of his settlement. This rule has its foundation in the maxim of Lord Coke, who says, in judgment of law, a bastard is *nullius filius ;* but at the present day, in England, the rule is restricted in its application to the case of inheritances. In this state, the maxim has lost its force, and the policy of our law is the reverse of that of England.

II. It is claimed that, under the act of 1801, illegitimate children either take and follow the settlement of their mother, or are capable of acquiring a settlement in their own right, by a year's residence in a town, under the fourth section of the act, unless warned.

1. Illegitimate children take and follow the settlement of their mother. The common law denies that the relation of parent and child exists between an illegitimate child and its mother ; but since our law recognizes the existence of this relation, it is vain to oppose this fiction of the common law to the legal consequences which attach to this relationship. The mother is entitled to the custody (5 T. R. 278,) and services of her child, (12 Mass. 383,) and is bound to maintain him. She can transmit an inheritance to him, and he can inherit from her ; and provision is made for his legitimation. Rev. Stat. 292. It would be singular, indeed, to hold that the relation of parent and child is recognized to exist, for every other purpose but that of determining the settlement of a pauper. It has been repeatedly adjudged in Connecticut, independent of any statutory provision, that illegitimate children take and follow the settlement of their mother. 1 Sw. Dig. 48 ; 1 Root, 155 ; Reev. Dom. Rel. 276 ; 5 Conn. 586 ; 6 do. 37 ; 9 do. 330. In this state, the question now raised, has never been decided. In *Plymouth* v. *Windsor*, 7 Vt. R. 327, the mother had no settlement within the state, and the court held the child was settled

where born.    The decision would have been the same had the child been legitimate, since legitimate children, where neither parent has a settlement within the state, are settled where born.    14 Petersdorff, 315.

2. John Sheldon, under the act of 1801, acquired a settlement in his own right, by residence, in Manchester.    If the court adopt the doctrine of the common law, that illegitimate children have no parents, to whose settlement they can be referred, John Sheldon must have acquired a settlement under the 4th section of the act, by one year's residence, unless warned.

The language of this section is—"All and every person ;" which embraces both minors and adults. In New Hampshire, under a similar statute, it was held, that both legitimate and illegitimate minor children acquired a settlement by one year's residence, unless warned.    1 N. H. 260, 264.

III.    The warning is defective.    Neither Charlotte Perry or John Sheldon are named in it, nor were they included under the description of Israel Sheldon and family, since those only constitute a man's family, for whose support the law imposes upon him an obligation to provide.    2 Vt. R. 155. The marriage between Israel Sheldon and Charlotte Perry was void by reason of his prior marriage, and she, then, was to be treated as a single woman, who could acquire a settlement in her own right, but whose settlement could not be affected by the warning in question.

*D. Roberts, jr.*, for plaintiff.

Joseph Perry, by a residence in Springfield from 1798 to 1807, acquired a settlement in that town.    Charlotte Perry, his daughter, residing with him during that time, and at the date of her pretended marriage to Israel Sheldon, (January 4, 1807,) she, then being but 16 years of age, had, therefore, her settlement in Springfield ; and so, too, when John Sheldon her son by Israel Sheldon was born, (October 17, 1810) unless by such pretended marriage she took the settlement of Israel Sheldon in Charlotte.    But Israel Sheldon, at the date of the pretended marriage to Charlotte Perry, and for many years afterwards, had a wife, *de jure*, living, and so the marriage to Charlotte Perry was void.

John Sheldon, then, was a bastard, born in Springfield,

the place of his mother's settlement—she then residing in
Manchester, and afterwards acquiring a settlement there.   If
settled in Springfield, at his birth, he acquired no settlement
elsewhere, afterwards, unless in Manchester, *in his own right*,
by being in that town with his parents until near four years
old, or, *in right of his mother*, through her after-acquired
settlement there.   These paupers, the lawful wife and chil-
dren of John Sheldon, now dead, take his settlement.   *Where
was it ?*

In his own right, being a minor, he could acquire no set-
tlement in Manchester.   *Winchenden* v. *Hatfield,* 4 Mass.
123 ; *Somerset* v. *Dighton,* 12 Mass. 383 : *Wells* v. *West-
haven,* 5 Vt. R. 322.

He could not acquire a settlement there, in right of his
mother.   From 1801 to 1817, there was no statute regu-
lating the settlement of bastards.   To resort, then, to the
rule of the common law — a bastard was settled where
born, without reference to the settlement of the mother,
and retained that settlement until he acquired one in
his own right.   1 Bl. Com. 363, 459 ; 1 Ld. Ray. 567 ;
Doug. 89 ; 1 Salk. 427 ; *Plymouth* v. *Windsor,* 7 Vt. R.
327 ; Swift, C. J. in *Hebron* v. *Marlborough,* 2 Conn. R. 18.

By the act of 1897, it was provided that, " every bastard
' child shall be deemed and adjudged to be settled in the
' town or place of the last legal settlement of his or her mother."
Therein the rule of the common law was changed.   The
act of 1801 expressly repealed this provision and abolished
every mode of acquiring a settlement, provided under the
act of 1797.   The necessary effect of this repeal was to re-
store the rule of the common law as to bastards.   The rule
is conceded by counsel and court, in *Plymouth* v. *Windsor,*
to have prevailed here, and is *the principle* of that decision·

The opinion of the court was delivered by

BENNETT, J.—The marriage of Israel Sheldon with Char-
lotte Perry, he then having a wife living, was void, and the
issue illegitimate.   By the principles of the common law, it
is well settled, that the place where born is the place of the
settlement of a bastard child, in cases free from fraud.   It
seems Charlotte Perry had, at the time of the pretended
marriage with Israel Sheldon, in 1807, a derivative settle-

ment in Springfield; and she, also, gave birth to John Sheldon in Springfield, while on a visit of some three months with her friends. It is admitted that, by the principles of the common law, Springfield was the place of the settlement of John Sheldon at the time of his birth. The mother had not, at that time, gained a settlement in any other place—not in Charlotte, by means of her marriage with Israel Sheldon, as that was *void*; not in her own right in Manchester, as she moved into that place in June, 1810, and John Sheldon was born in the fall of the same year. Whether, then, the settlement of a bastard child follows the settlement of the mother, or whether it has a settlement where born, the settlement of this John Sheldon was at Springfield; and this settlement continues until another is acquired, either in his own right, or else a derivative one.

It is urged, in argument, that this child, afterwards, gained a derivative settlement from his mother in Manchester, and if not so, that he must have gained a settlement there in his own right. The act of 1797 expressly provided that the settlement of a bastard child should follow that of the mother. By the act of 1801, there is no provision as to the place of settlement of bastards; but they are left as at common law. In 1817, the subject of settlements again engaged the attention of the legislature, and in the act of that year it was again provided that the settlement of a bastard shall follow that of the mother. The question in this case is to be settled under the act of 1801. There seems no good reason to prevent Charlotte Perry from having gained a settlement in Manchester, in her own right. She was not the wife of Israel Sheldon, and she lived there more than the requisite time. Third persons in interest may well impeach, collaterally, the validity of a marriage. *Middleborough* v. *Rochester*, 12 Mass. R. 363; *Mountholly* v. *Andover*, 11 Vt. R. 226. The warning out of Israel Sheldon and his family can have no effect. In no proper sense was she a part of his family; which includes those and those only whom, by law, he was bound to support. 2 Vt. R. 158.

The question, then, returns—did Charlotte Perry communicate a derivative settlement to her illegitimate child, John Sheldon? By the last clause of the first section of the act of 1797, it is provided, " that every bastard child shall be

deemed and adjudged to be settled in the town or place of the last legal settlement of his, or her mother." By the act of 1801, the first section of the act of 1797 is repealed; and in that act there is no provision relative to the settlement of bastard children. The law of 1801 was in force until 1817, when an act was passed, which, among other things, provided that illegitimate children should have the settlement of their mother, and the act of 1801 was repealed. By the principles of English common law, it is well understood that an illegitimate child cannot obtain a derivative settlement from its putative father or its mother. But it is urged that this doctrine is unreasonable, as it may expose a tender infant to be separated from its natural mother; and this court is now judicially called upon, for the first time, to introduce, as the law of this state, the principles that have obtained in Connecticut from an early day, where, as judge Peters (6 Conn. R. 36) somewhat quaintly observes, they have discovered, that a bastard is the child of its mother, and consequently, can acquire a derivative settlement from her. But we have heard of no practical difficulties or hardships among us, arising from the principles of the common law. The same objection might be made against the principle, that, when a widow gains a settlement by marriage, her children, by a former marriage, do not follow her settlement, thus obtained, but still retain that of their deceased father.

As, with us, the law relative to derivative settlements of illegitimate children, from 1801 up to 1817, depended upon the principles of the common law, the decisions which have been made in the common law courts in England, are authorities for us, and alike binding as on other questions arising upon the common law. Besides, when the provisions of the act of 1797 were repealed by that of 1801, and, in 1817, the law was again restored, altering the rule of the common law, it is a fair inference, that the legislature contemplated the legal result, in the meantime, to have followed, (that is, a restoration of the common law rule) and that it had followed. We think it safest that we should adhere to the common law rule; and be satisfied with administering the law as we find it. It is always of dangerous tendency for a court to introduce, in their discretion, a new rule to govern the rights of parties, unknown at common law.

BENNINGTON,<br>*February,*<br>1843.<br><br>Manchester<br>*v.*<br>Springfield.

It is also claimed, that, if John Sheldon failed to acquire a derivative settlement in Manchester, from his mother, he must have gained one in his own right. It seems that he lived with his mother in Manchester till he was about four years of age. In the case of *Wells* v. *Westhaven*, 5 Vt. R. 326, it was held that an infant daughter of 12 years of age, who had gone with her mother into Westhaven to live with her step-father, did not gain a settlement, under the act of 1801, by her residence there, more than a year without being warned out. The court say,—" she may be considered as going there for education." In the case before us, the child was taken to Manchester for nurture. The statute, which provided that " all ' and every person coming into, and residing within any town ' in this state, (not being warned out) should, after one year, ' gain a settlement in such town," can only include those who come to reside in the ordinary way ; and to extend it to those who, from their tender years, or idiocy, were incapable of acting for themselves, would, indeed, be a strange construction. In Massachusetts they had a statute similar in its provisions, to our statute of 1801, and in the case of *Somerset* v. *Dighton*, 12 Mass. R. 383, the court held that the provision, requiring persons to be warned out, to prevent their acquiring a settlement, did not extend to minors, although illegitimate. The provisions of the Massachusetts statute are as broad as ours. The words are, " *all persons,* citizens of this commonwealth, who resided, &c." It is a common rule, relative to the construction of statutes, to give them such a construction as will best effectuate the intention of the legislature. In some cases, the letter of the statute may, by an equitable construction, be restrained, and in others, it must be enlarged; and in some instances, the construction has been contrary to the letter. We think it is quite manifest, that the general words of the fourth section of the act of 1801, though the terms, " all and every person," are used, were not intended to include persons incapable of acting for themselves, but only such as were competent to gain a settlement by residence, if not prevented by being warned out.

The result, then, to which we arrive is, that John Sheldon had not a settlement in Manchester, at the time of his death, in 1842, but still retained, up to his death, his settlement in

Springfield. By the marriage the wife acquired a derivative settlement from the husband, *Wells* v. *Westhaven*, 5 Vt. R. 325; and, upon his death, the widow and children were properly removed to Springfield.

The judgment of the county court is affirmod.