TOWN OF BURLINGTON *v.* TOWN OF ESSEX.

An order of removal of a pauper and his wife and "their four children" will not be quashed on motion, although it do not state the names of the children, nor allege that the children are minors. The court will rather intend that a pauper's children, living with him as a part of his family, were dependent upon him as a parent and subject to his parental control, than that they were adult children and emancipated.

---

Burlington *v.* Essex.

---

At common law the settlement of an illegitimate child was at the place of his birth, unless fraud had been practised to occasion the birth to happen at that place, or the mother had been transported or conducted thither under legal authority;—and in this respect the rule of the common law, in this state, was not changed by the statute of 1801.

And under the statute of 1817 the settlement of an illegitimate child, acquired by birth previous to the enactment of that statute, will not be changed by the mother's acquiring a new settlement by marriage, but only by the mother's acquiring a new settlement in her own right.

APPEAL from an order of removal of certain paupers from Burlington to Essex, made by two justices of the peace. It was stated in the order, that the justices considered, that "Henry H. Messenger with his wife Susannah H. Messenger and his four children" had become chargeable to Burlington as paupers, and that his legal settlement was in Essex, and that "of right he ought to be removed, with his said wife and family," to Essex; and it was ordered, "that the said Henry H. Messenger do remove, with his said wife Susannan H. Messenger and their four children and effects," to Essex by a time specified, or that they be removed, according to the statute. The defendants moved to quash the order, as to the four children, because they were not named, either in the order, or warrant, and because it was not alleged that they were minor children; and it was averred, in the motion, that four children were in fact removed, by virtue of the order.

The county court, May Term, 1844,—ALLEN, assistant judge of Chittenden county court, presiding,—overruled this motion; to which decision the defendants excepted.

The parties then agreed upon the following statement of facts. The pauper, Henry H. Messenger, was the illegitimate child of one Eward Badger, and was born in Essex, in 1814. In 1827, and before he became of age, his mother was married to a man who then had his legal settlement in Jericho, in this state; and the pauper then removed to Jericho with his mother, and continued to reside with her there, in the family of her husband, until after he became twenty one years of age. The mother of the pauper, at the time of his birth and until her marriage, as above stated, had her legal settlement in Essex; and the pauper did not, at any time after the mar-

riage, acquire a legal settlement in Essex in his own right, and was, at the time of his removal, · chargeable to Burlington.

The county court, October Term, 1844,—ALLEN, assistant judge, presiding,—decided, that the paupers were duly removed.   Exceptions by defendants.

*J. Carpenter* and *A. Peck* for defendants.

The pauper took the settlement of the mother, in Jericho.

1. It is conceded, that, at common law, a bastard takes a settlement by birth, but none by parentage.   The reason, at common law, for giving the child the settlement of the father, is that they ought not to be separated ; *Cumner* v. *Milton*, 2 Salk. 528.   This rule was not applied to bastards, for the reason, that, at common law, a bastard is considered *nullius filius*.   But as our law recognizes the relation of parent and child between the mother and bastard, the rule here ought to be different.   This consideration induced the court in Connecticut to allow a bastard to take the settlement of the mother, by parentage, whether that settlement was in her own right, or derivative,—and regardless of the time when acquired.   1 Sw. Dig. 48. 2 Ib. 821.   Reeve's Dom. Rel. 276.   1 Root 29.   *Canaan* v. *Salisbury*, 1 Root 155.   *Hebron* v. *Marlborough*, 2 Conn. 20.   *Danbury* v. *New Haven*, 5 Conn. 584.   *Woodstock* v. *Hooker*, 6 Ib. 36. *Guilford* v. *Oxford*, 9 Ib. 322.   *New Haven* v. *Newtown*, 12 Ib. 165.

2. If the common law rule is settled in this state, in the absence of legislative provision, it is insisted that the statute of 1817, in force at the time of the marriage of the mother, which provides that " a married woman shall always have the settlement of her husband," " legitimate children shall have the settlement of their parents," " *illegitimate children shall have the settlement of their mother,*" and that " *children shall not gain a settlement by birth,*" is decisive. The statute cannot be limited to the settlement existing at the birth of the child ; had such been the intention, it would have been so expressèd.   To limit it to a settlement of the mother in her own right would be equally absurd ;—as in that case the mother might have a settlement derived from her father at the birth of the child, and yet the. child be without a settlement.   `We insist that by the statute, in all cases, when the children take the settlement of the father, whether his is a settlement in his own right, or derivative, they

follow his settlement; and when they take the settlement of the mother, they follow hers in the same way. Similar statutes in New York and Massachusetts are so construed. *Plymouth* v. *Freetown*, 1 Pick. 197. *Canajoharie* v. *Johnstown*, 17 Johns. 41. *Petersham* v. *Dana*, 12 Mass. 429.

3. The order as to the four children ought to have been quashed. It appears that there were four children, who were removed; this distinguishes the case from *Bristol* v. *Braintree*, 10 Vt. 203. See *Hartland* v. *Williamstown*, 1 Aik. 241 ; *Newbury* v. *Brunswick*, 2 Vt. 151. *Wells* v. *Westhaven*, 5 Vt. 322.

*Kasson* and *Buckley* for plaintiffs.

1. The English cases, where orders have been quashed as to persons not mentioned *by name,* are where the words of the order were "A. and his *family,*"—and upon the obvious ground, that the term "family," under the English statute, might include servants and others not removeable. But it has never been doubted, that the words "A. and his wife" were sufficiently certain; nor was it ever held, that the words " A. and his wife B. and *their* children " were insufficient. *Newbury* v. *Brunswick,* 2 Vt. 158. *Bristol* v. *Braintree,* 10 Vt. 203.

2. The pauper was born in Essex while the statute of 1801 was in force ; and hence, by the rule of the common law, he had his settlement where he was *born; Manchester* v. *Springfield,* 15 Vt. 385 ;—and in that case it was held, that a bastard did not follow the *derivative* settlement of his mother ; and the same principle is adopted in *Wells* v. *Westhaven,* 5 Vt. 326,—where the court held, that the children of a *widow* by the first husband derived no settlement from the *second* husband. The doctrine of derivative settlements is based on the idea of *obligation,* on the part of him through whom it is derived, to support the individual. But in the case of a *bastard* there is no such obligation on the part of either father, or mother. *Manchester* v. *Springfield,* 15 Vt. 385. *Manchester* v. *Rupert,* 6 Vt. 291. *Cumner* v. *Milton,* 2 Salk. 528. *Woodward* v. *Paulsbury,* 2 Ld. Raym. 1473. *Freetown* v. *Taunton,* 16 Mass. 52. *Wells* v. *Westhaven,* 5 Vt. 325. *Danbury.* v. *New Haven,* 5 Conn. 584, and *Woodstock* v. *Hooker,* 6 Conn. 36, depend wholly upon the statute of Connecticut,—as does *Canajoharie* v. *Johnstown,* 17 Johns. 43, upon that of New York.

We contend that the statute of 1817 was only intended to operate prospectively, and cannot affect the present case, where the bastard was born prior to its enactment. Under this statute it has been held, that a widow and her children may acquire settlements in their own right, and that the settlement of the children is not affected by the marriage of the mother;—and we do not see how a bastard can be any more subject to the mother's settlement.

The opinion of the court was delivered by

ROYCE, Ch. J. The case is brought here upon exceptions to the decision of the county court, first, in overruling the motion to quash the proceedings in reference to the family, and second, in sustaining the order of removal upon the merits.

The ground of the motion is, that the members of the family, besides the wife, are not named; and there are many precedents, both in England and this country, for quashing such proceedings as to the family, when it does not appear how the family was constituted. This is said to be for the reason, that the order and warrant may, in such a case, operate upon persons not liable to be removed with the pauper; as upon hired domestics, or temporary inmates of the household. But that reason fails in this instance, since the family is described as consisting of the pauper's wife and his four children. It is contended, however, that the defect is not cured, inasmuch as the children are not alleged to be minors. But we think the want of such an averment is not, in this case, fatal. For so long as it appears that they were the pauper's children, and living with him as part of his family, we should rather intend that they were dependent upon him as a parent, and subject to his parental control, than that they were adult children and emancipated.

The remaining inquiry regards the paupers's settlement. He was born in Essex in 1814, being the illegitimate son of a woman then having her settlement in that town. In 1827 the mother acquired a settlement in Jericho by marriage; and the question is, whether her minor son, the pauper, took that settlement, or retained his settlement in Essex.

It is certain, that, by common law, he could derive no settlement from his mother, since he would be regarded, for this purpose, as for nearly all others, as *nullius filius.* His place of birth would ne-

cessarily be his place of settlement, unless fraud had been practised to occasion the birth to happen at that place, or the mother had been transported or conducted thither under legal authority. 1 Bl. Com. 363, 459. Reeve's Dom. Rel. 276. 3 Burns' Just. 357. *Manchester* v. *Springfield*, 15 Vt. 385. And the statute of 1801 (the only existing statute in relation to settlements, when this pauper was born) had no provisions touching derivative settlements. It did not intercept such as resulted from common law, as in the case of a wife, or legitimate child, nor did it confer any in the case of an illegitimate. The pauper, therefore, became settled in Essex, at his birth, by force of the common law.

The subsequent statute of 1817 enacted, that illegitimate children should have the settlement of their mother. But the statute, in its terms, being wholly prospective, ("settlements shall *hereafter* be acquired" &c.) it ought not to be made retrospective by construction. And hence it may be assumed, that the statute did not operate to supercede the existing settlement of the pauper by that of his mother, or to merge the former in the latter, when they had previously been distinct and independent.

This position is moreover established by the case of *Manchester* v. *Springfield*, before cited, which, so far as the statute of 1817 was concerned, is identical with the present statute. And as the mother's original settlement in Essex must be taken to have continued until her marriage in 1827, it follows, that the pauper never had her settlement before that event.

The question recurs, was the new settlement, which she then acquired, communicated to the pauper by the statute of 1817, and his own previous and independent settlement thereby determined? In regard to the settlement of married women, that statute was merely in affirmance of the common law. And it has hitherto been so considered in relation to the settlement of legitimate children. They " have the settlement of their parents," as well by force of the common law, as under the statute. But the common law does not give to children by a prior marriage the settlement, which the mother may acquire by a subsequent marriage. The reason is, that such children do not, as a matter of course, constitute any part of the new husband's family. He is not bound to provide for them, nor can his wife do so, without his consent. Consequently they retain the

settlement, if any, which they had before such marriage of their mother. *Freetown* v. *Taunton*, 16 Mass. 52. *Dedham* v. *Natick*, Ib. 135. And thus far the statute in question has been regarded as operating precisely to the same effect. The reasons for the common law rule have lost none of their force by the passage of that statute.

But it is not perceived that any satisfactory distinction, in this respect, can exist between the cases of legitimate and illegitimate children. The statute is equally as positive, that the former shall have the settlement of their parents, as that the latter shall have the settlement of their mother. And a settlement acquired by a widow, otherwise than by marriage, (a settlement in her own right,) not only supersedes her previous settlement, if she had one, but is communicated to her minor children, and supersedes theirs. *Bradford* v. *Lunenburgh*, 5 Vt. 471. So a settlement, thus gained by the mother of an illegitimate child, would necessarily be followed by the like consequences. But unless the marriage of a mother could operate, under the statute of 1817, to change the settlement of legitimate children, it must be vain to contend that it should have that effect in the case of an illegitimate child.

But cases are cited from the neighboring states, which are claimed to have established a different doctrine. They will be found, however, to conclude nothing upon the construction of such a statute as that of 1817. The case of *Petersham* v. *Dana*, 12 Mass. 429, arose under their statute of 1789, which enacted, that an illegitimate child should be deemed to be *an inhabitant with his mother*, until he should gain a settlement in some other town, or district. And it was considered, that these words of the statute could not be satisfied, unless the settlement of the child became changed with that of the mother, even though hers was changed by marriage. So the case of *Canajoharie* v. *Johnstown*, 17 Johns. 43, turned upon the words in their statute—" last legal settlement of the mother;" the court remarking, that the very expression " *last* legal settlement" supposed that the mother's settlement might be changed. In Connecticut they appear to have recognised a peculiar and local common law, as applicable to the case of illegitimate children. Their doctrine would seem to be, that such a child does not take a settlement by birth, if the mother has a settlement within the state, but that he takes her settlement. But the case of *New Haven* v. *Newtown*, 12

13

Conn. 165, is the only one recollected, in which a settlement of such a child, actually acquired by birth, was afterwards changed by a marriage of the mother.    And that case was decided by a bare majority of the court.

The conclusion is, that, as in this instance, the new settlement of the mother was not acquired in her own right, it was not communicated to the pauper, and that he was therefore duly removed.

                                   Judgment of county court affirmed.