Hon. ASAHEL PECK,
Hon. HOYT H. WHEELER,
Hon. HOMER E. ROYCE,
Hon. JONATHAN ROSS,    } Assistant Judges.

---

## THE TOWN OF MORRISTOWN v. THE TOWN OF FAIRFIELD.

*Jurisdiction of Justices of the Peace. Presumptions in favor of Innocence. Transmission of Settlements. Effect of Waiver of Order of Removal. Pleading. Removal of Minors without their Parents, and their coming to Reside, within the meaning of the Statute.*

Justices of the peace who are rated inhabitants and tax-payers in a town, are not thereby disqualified from making an order of removal of a pauper in a case where such town is a party.

As in criminal prosecutions for bigamy the presumption of innocence prevails over the presumption of duration of life, so in civil suits between towns in questions of settlement under pauper laws, the same legal presumption of the legality of a second marriage is generally applied; but the law will not presume a *divorce* from a former marriage, in order to legalize a second one.

settlement acquired by a father after the majority of a child who does not continue a member of the father's family, is not communicated to such child.

H., his wife and children, were twice ordered to remove from Morristown to Highgate. The overseers of said towns thereupon made an arrangement, by which H. was received as a pauper properly chargeable to Highgate, and Morristown waived the orders as to

6

the wife and children, by reason whereof Highgate forbore to appeal from said orders. The pauper whose settlement was in question in this case, was one of said children. *Held*, that said orders had no effect to change the settlement of said pauper.

Under our statute, a derivative settlement acquired by marriage by the mother of an illegitimate child, after the birth of the child, is not communicated to such child.

An allegation in a plea that the pauper was "unduly removed," and that "said town is not chargeable with the support of said pauper," is not an allegation of any traversable fact, but is only a legal conclusion from the allegation that "said town is not the last place of legal settlement of said pauper." Such a plea does not present the question, whether the pauper, an illegitimate child, being a minor and residing with his mother, was subject to removal without her.

But, treating the question as raised, the *simple fact* that the pauper was a minor, does not render him irremovable to the place of his legal settlement, without the removal of his mother.

Minor children whose tender age, or physical or mental weakness or condition, make it necessary that they should have the care, sympathy, and control of their parents, rendering it improper, upon the principles of humanity, that they should be separated, are irremovable from them, notwithstanding the general, unqualified language of the statute.

The objection that a pauper who is a minor cannot come to a town to reside, within the meaning of the statute, cannot prevail when such minor is brought to the town by its parents as part of the family, when they came there to reside.

APPEAL from an order of removal of Willis Hogaboon, a pauper, from the town of Morristown to the town of Fairfield. Plea, that the pauper was unduly removed, and was not chargeable to the town of Fairfield, and that said Fairfield was not the place of said pauper's last legal settlement. The defendant also filed a plea to the jurisdiction, for that the justices who made said order were rated inhabitants and tax-payers in said Morristown at the time of the making thereof; to which the plaintiff demurred. The court, at the May term 1871, REDFIELD, J., presiding, sustained the demurrer and adjudged the plea insufficient; to which the defendant excepted. The issue formed on the other plea was tried by the court, and the following facts found: The pauper's mother, whose maiden name was Charlotte A. Bartram, was the daughter of Willis Bartram, who resided in Fairfield and had his legal settlement there when Charlotte became of age. She continued to reside in Fairfield with her father and grandfather until about 1848, when, being twenty-five years of age, she married James Hogaboon, with whom she cohabited about twenty years, and they had several children, of whom the pauper was one. About 1855, Willis Bartram removed from Fairfield to Bakersfield, and resided there, supporting himself and family, until he gained a legal settlement there. At the time he married the said Charlotte, said Hogaboon had a wife living, by whom he had sev-

eral children, and who was shown to have been living about two years before the trial. He always had his legal settlement in Highgate, and died there a pauper in 1869. He removed to Morristown prior to 1865, and resided there with the said Charlotte and his children, including the pauper, and kept house with his family, and became chargeable to that town several times.

The defendant read in evidence a copy of an order of removal of James Hogaboon, his wife, and son Jay Hogaboon, from Morristown to Highgate, dated February 25, 1868. Also a like order of removal of James Hogaboon and family from Morristown to Highgate, dated the 28th of April, 1869, and the return of the officer serving the warrant. From these orders of removal there was no appeal ; but it was proved that an arrangement was made between the overseers of Morristown and Highgate, by which Hogaboon was received as a pauper properly chargeable to Highgate, and the orders of removal were waived by Morristown as to Charlotte and the children, and that Highgate forbore to take an appeal from such orders, by reason of such arrangement.

While the the said Charlotte was living with Hogaboon, she was married to one Gale, whose legal settlement was, and still is, in the town of Elmore. The pauper is still a minor, and there was no evidence of his emancipation, and he became chargeable to Morristown at the time of this order of removal. Soon after the' said Charlotte married Hogaboon, she discovered a paper in one of his pockets, which she called a " *divorcement ;*" but there was no evidence of its contents, or that it purported to be signed by any person, or to be issued by any court.

The defendant claimed that in favor of innocence, from the long time Hogaboon and the said Charlotte had lived together as husband and wife, the law would not bastardize their issue, but would presume Hogaboon's divorce from his former wife ; that the pauper had a derivative settlement from his grandfather, Willis Bartram, in Bakersfield ; that by reason of his mother's marriage to Gale, the pauper had his legal settlement in Elmore, and that the pauper, being a minor, residing with his mother, was not subject to removal under the statute. But the court adjudged that the marriage of the said Charlotte to said Hogaboon was

void ; that if her marriage to Gale were valid, it would not make the pauper's settlement in Elmore ; that the pauper's legal settlement was in the town of Fairfield ; that his grandfather's settlement in Bakersfield was not communicated to him ; and that the pauper was duly removed ; to which the defendant excepted.

*F. M. McIntyre*, for the defendant.

The plea to the jurisdiction should have been adjudged sufficient. It sufficiently sets forth that the justices were rated inhabitants and tax-papers in the town of Morristown, and thereby interested in said cause or matter, and disqualified to act under § 22, ch. 31, of the Gen. Sts. The demurrer admits all the facts to be true. There can be no claim but that the justices did a *judicial act*, and took *cognizance of a cause or matter* within the meaning of the statute. This is a civil cause, and to be tried the same as other civil causes. Gen. Sts. § 9, ch. 20 ; Laws of 1864, No. 18, § 1 ; *Londonderry* v. *Acton*, 3 Vt. 122. Justices and jurors are expressly prohibited from taking cognizance or acting in cases of this kind, when the town in which they reside is a party or interested. Laws of 1867, No. 40, § 3.

The words, " though inhabitants of such town," § 4, ch. 20, Gen. Sts., do not give the justices jurisdiction, provided it appears that they are rated inhabitants and tax-payers of the town, and interested in the cause or matter. The word *inhabitant* does not import a tax-payer, as there are many ways in which an inhabitant may be excused from paying taxes. *Pierce* v. *Butler*, 16 Vt. 101 ; Vt. Justice, 171 ; *Waters* v. *Day*, 10 Vt. 487.

The pauper's settlement was not in the town of Fairfield. The father of the pauper, James Hogaboon, always had his legal settlement in the town of Highgate ; and his intermarriage with the mother of the pauper, and a continued cohabitation with her for twenty years, treating and supporting her as his lawful wife, and their children as his legitimate children, confers upon said children his settlement ; and the validity of said marriage cannot be inquired into and their issue bastardized. *Newbury* v. *Brunswick*, 2 Vt. 151.

The court should have held that, in favor of innocence, it would

be presumed that the " divorcement " discovered in the pocket of James Hogaboon, the father of the pauper, was a legal divorce from his former wife, there being no evidence to the contrary, and that his marriage with the mother of the pauper was legal and valid, as the presumption of law is that all persons are innocent of any crime or wrong until the contrary is proved ; and much more as these parties continued to cohabit for a period of over twenty years as husband and wife. *Greensboro* v. *Underhill*, 12 Vt. 604.

The pauper being a minor and never emancipated, and being in the family and under the care and protection of the mother, who, if her marriage with Gale was legal and valid, had her settlement in Elmore, could have been removed only with his mother, to said town of Elmore ; nor could he be removed without his mother, as it has been held by repeated decisions, that families cannot be broken up or separated. *Hartland* v. *Windsor*, 29 Vt. 354 ; *Hardwick* v. *Pawlet*, 36 Vt. 320.

The pauper in this case being a minor, and never having been emancipated, it could not be said that he went to the plaintiff town with an *intent to remain or reside ;* for, being a minor, he could not have such intent, nor could he be removed if ordered. 1 N. H. 264 ; 3 N. H. 472 ; 12 Mass. 430 ; *Wells* v. *West Haven*, 5 Vt. 322 ; *Sherburne* v. *Hartland*, 37 Vt. 528. When the mother and minor children reside separate and apart from the husband or father, or if he be dead, and she is keeping house by herself, taking care of and managing the family, she is to be considered the head of the family, so that her minor children living with her are not liable to be removed without her, or separated from her. *Bethel* v. *Tunbridge*, 13 Vt. 445.

The orders of removal of James Hogaboon, his wife and children, naming them, including this pauper, from the plaintiff town to Highgate, unappealed from, conclusively fixed the pauper's settlement in Highgate. *Dorset* v. *Manchester*, 3 Vt. 370 ; and it was not competent for the overseers of the poor of Morristown and Highgate, to abandon their orders of removal in part, and leave them valid in part.

The adjudications in these cases by the plaintiff town, and a

decision that said Charlotte A. and her children are the wife and children of said James Hogaboon, conclusively fixes and determines that question, and all questions considered by said court as to said plaintiff town, unless appealed from. *Cabot* v. *Washington*, 41 Vt. 168 ; *Stowe* v. *Brookfield*, 26 Vt. 524.

The court should have held that if they found the marriage of the mother of the pauper to Gale a valid marriage, and his settlement in Elmore, that her children—who are all minors, the pauper in question inclusive, and never having been emancipated— would take her settlement acquired by such marriage, until they became of age or were emancipated, so long as they were accepted by him into his family.

The father of the pauper's mother, Willis Bartram, having his legal settlement in the town of Bakersfield before her intermarriage with Gale, and before the pauper in this case became chargeable, never having gained one in her own right, her settlement was in Bakersfield, and consequently the pauper's would be there. Legitimate children follow and have the settlement of their father. Gen. Sts. ch. 19, § 1.

The recognition of the pauper by his father, James Hogaboon, and also by his mother, as their legitimate child, although he may have been illegitimate, is sufficient to give the pauper the settlement of his father, and this case shows that the pauper was recognized by both father and mother at the time of his birth and ever afterwards until the death of the pauper's father, to be their legitimate child. *Rockingham* v. *Mount Holly*, 26 Vt. 653.

*Powers & Gleed*, for the plaintiff.

The demurrer to the plea to the jurisdiction was properly sustained. The language of § 4, ch. 20, Gen. Sts., " Any two justices though inhabitants of said town," was intended to mean rated inhabitants or tax-payers. The act of 1797 (Slade's Comp. 370) provided that the "two justices" should not be inhabitants ; but the act of 1817 (p. 383) reads as follows: "Notwithstanding such justices may be inhabitants of such town as may be *interested* in such cause." The term "interested" shows clearly that the idea of interest as a tax-payer was in the mind

of the legislature. It was so construed by the act of 1821 (Slade's Comp, 383), and by Judge MATTOCKS in *State* v. *Batchelder*, 6 Vt. 489.

In settling the liabilities of these towns, the guilt or innocence of the pauper, or of his father and mother, do not enter into the question; much less presumption, either one way or the other. No presumption in favor of innocence can overcome the *fact* expressly found in this case, that the marriage with James Hogaboon was void, and that the mother of the pauper was a single woman, and the pauper, therefore, an illegitimate child. The liabilities of towns to support their paupers are based upon strict rules of law, which courts never vary or dodge, in the vain attempt to conceal that crime and ignorance which are at once the cause and companion of pauperism.

The case shows that at the time Charlotte Bartram, the mother of the pauper—became of age, her father had his legal settlement in the town of Fairfield, and that Charlotte never gained a settlement in her own right. The subsequently acquired settlement of Willis Bartram in Bakersfield, does not affect his daughter Charlotte's settlement, nor the pauper's. *Poultney* v. *Glover*, 23 Vt. 328 ; *Hardwick* v. *Pawlet*, 36 Vt. 320 ; *Tunbridge* v. *Eden*, 39 Vt. 17. The pauper was the illegitimate child of the said Charlotte, and her marriage with Gale, if a legal marriage, long after the birth of the pauper, would not affect his settlement. *Newport* v. *Derby*, 22 Vt. 553, and cases there cited.

The opinion of the court was delivered by

PECK, J. The justices who made the order of removal having been rated inhabitants and tax-payers in the town of Morristown at the time they made the order, would be disqualified to act as justices in the case by the general provision of Gen. Sts. ch. 31, § 22, prohibiting justices of the peace from taking cognizance of a cause or matter, or doing any judicial act, in which they are interested. But Gen. Sts. ch. 20, § 4, provides that "any two justices, though inhabitants of said town" from which the removal is made, may make the order. The particular provision of the

statute must prevail over the general provision, if the two pro-
visions conflict. The particular provision that "*any two justices,
though inhabitants of said town,*" &c., must be construed to include
justices who are rated inhabitants; otherwise the words, "*though
inhabitants of said town,*" are without legal significance or effect;
as a justice who is an inhabitant of the town, but not rated or
taxed therein, would not be interested or disqualified under the
general provision of ch. 31, § 22, by reason of being such in-
habitant. A statute should be so construed as to give effect to
every part of it, unless it is thereby rendered repugnant or irrec-
oncilable with its obvious intent. It is so generally true that the
inhabitants of a town are rated, and tax-payers therein, that it is
manifest that the legislature used the word *inhabitants* as synony-
mous with, or as including, rated inhabitants. This has long been
the practical construction of this provision of the statute, and
of former statutes on this subject containing similar language.
The plea to the jurisdiction of the justices was properly over-
ruled.

As the mother of the pauper, whose maiden name was Char-
lotte A. Bartram, resided in Fairfield with her father, Willis
Bartram, at the time she arrived to the age of majority, she took
the settlement of her father which he then had in Fairfield ; and
having continued to reside there with her father until about 1848,
when, twenty-five years old, she married James Hogaboon, her
settlement at the time of this marriage was still in Fairfield. The
pauper in question is the fruit of this marriage, and if the mar-
riage was a legal marriage, the pauper had from his father a
derivative settlement in Highgate, where his father's settlement
ever was up to and at the time of his death in 1869 ; and on this
hypothesis the pauper was unduly removed. But the case shows
that "James Hogaboon, at the time he married Charlotte A.,
had a wife living, and by that marriage had several children ;
and such wife was proved to have been living some two years
ago." Hogaboon having another wife living at the time of his
marriage to the pauper's mother, rendered this marriage void ;
and therefore neither the mother of the pauper, nor the pauper,
derived any settlement from Hogaboon, the pauper's father. The

position of the defendant's counsel that from the long time Hogaboon and the pauper's mother lived together as husband and wife, the law, in favor of innocence, would presume a divorce of Hogaboon from his former wife, is not tenable.  In a criminal prosecution for bigamy, it is necessary to a conviction that the government prove, not only two marriages of the accused, but also that the former wife or husband of the accused was living at the time of the subsequent marriage ;  as the presumption of innocence prevails over the presumption of the duration of life. The same legal presumption of the legality of a second marriage is generally applied in civil suits between towns in questions of settlement under pauper laws.  Such presumption would be made in this case, did it not appear that it was proved that the former wife of Hogaboon was living at the time of his marriage with the mother of the pauper.  But to presume a *divorce*, of Hogaboon from his former wife, is quite a different matter from presuming her *death*, especially as a divorce, if any, is matter of record, and generally easily proved.  Death is an event that happens to all, and the only uncertainty attending it is that of time ;  but a divorce is a rare and unexpected event, happening to but few, and is the exception and not the rule.  A divorce from the bonds of matrimony generally involves a gross violation of the obligations of the marriage relation, and often a crime, in one of the parties ; hence, to presume in favor of innocence, a divorce in this case, would be too much like presuming one crime to avoid the conclusion of another.  The paper found by the pauper's mother in Hogaboon's pocket soon after her marriage to him, which she called a *"divorcement,"* with no evidence of its contents, is not sufficient with the other facts in the case to warrant such presumption.

The settlement which the father of the pauper's mother acquired in Bakersfield after her majority, was not communicated to her, and hence her son, the pauper, took no settlement in that town.

It is insisted on the part of the defense, that the orders of removal of James Hogaboon and family in 1868 and in 1869, from Morristown to Highgate, with the officer's return of service, from

7

which there was no appeal, conclusively fixed the pauper's settlement in Highgate. Copies of those orders have not been furnished us, but the substance of them appears to be stated in the exceptions. Whatever the effect of those orders may have been in the absence of any arrangement between those towns in relation to them, as it appears that the overseers of the two towns made an arrangement by which James Hogaboon was received as a pauper properly chargeable to Highgate, and the orders of removal were waived by Morristown as to Charlotte A. and the children, and that Highgate forbore to take an appeal from the orders by reason of such arrangement, the orders of removal had no effect to change the settlement of the pauper in question in this case.

It follows, therefore, that the settlement of the pauper's mother continued in Fairfield to the time of her marriage with Gale ; and the pauper, from his birth down to the time of this marriage, had a derivative settlement from his mother, in Fairfield. The marriage of the pauper's mother with Hogaboon being void, her subsequent marriage with Gale was valid, and by it she took a derivative settlement from Gale in Elmore, where his settlement then was, and still is. It is insisted that if the marriage of the pauper's mother with Hogaboon is invalid, and the pauper regarded as illegitimate, and that the marriage with Gale is valid, then the pauper, being a minor, took the derivative settlement of his mother in Elmore, which she acquired by her marriage with Gale. It is only by statute that an illegitimate child takes the settlement of the mother. By our statute it is provided that " illegitimate children shall follow and have the settlement of their mother." Gen. Sts. ch. 19, § 1. If the settlement which the mother acquired in Elmore had been acquired by her in her own right, the pauper would have taken that settlement. But the question is, whether this provision of the statute includes a derivative settlement which the mother of an illegitimate child acquires by marriage subsequent to the birth of such child. In Connecticut it is held, in relation to illegitimate children, that such derivative settlement thus acquired by the mother by marriage after the birth of such children, is communicated to them. *New Haven* v. *Newton*, 12

Conn. 171 ; *Newton* v. *Fairfield*, 18 Conn. 352 ; *Oxford* v. *Bethany*, 19 Conn. 232. In Massachusetts and in New York, under statutes very similar and almost identical with ours in relation to illegitimate children taking the settlement of the mother, it is held that they follow the settlement of the mother acquired by her marriage after their birth, the same as if acquired in her own right. And in England, under the provision of 4 & 5 W. 4, c. 76, s. 71, which provides that illegitimate children, born after the passing of the act, shall have and follow the settlement of the mother, it is held that the settlement of illegitimate children, born after the passing of the act, follows the mother's settlement acquired by marriage after their birth. *The Queen* v. *St. Mary*, 4 Q. B. 581, (45 E. C. L. 579). But in *Burlington* v. *Essex*, 19 Vt. 91, it was decided that under the act of 1817, the provision that "illegitimate children shall have the settlement of their mother," did not extend to a settlement acquired by the mother after the birth of such children ; and in *Newport* v. *Derby* the same question was decided the same way under the present statute, the court holding that notwithstanding the addition of the word *follow* in the present statute, the construction was the same as the act of 1817 in respect to this question. It is true that in *Burlington* v. *Essex*, the illegitimate child, the pauper, was born under the act of 1801, and took a settlement by birth by the common law, as the act of 1801 had no provision giving illegitimate children the settlement of the mother ; and the court in that case seem to have attached some importance to that fact. But it is difficult to see how that fact was of any importance, as the subsequent marriage of the mother, relied on as changing the settlement of the pauper, took place under the act of 1817. It is evident from the opinion of the court in that case, the decision would have been the same, independent of that consideration. In *Newport* v. *Derby*, the illegitimate child, the pauper, was not born till after the act of 1817 was in force, the provisions of which remained in force till the present statute was passed ; and neither the pauper nor the mother ever had any settlement in the state except the settlement of the mother which she acquired by marriage after the birth of the pauper. The pauper in the case at bar did not take

the settlement of his mother which she acquired by her marriage with Gale.

It is stated in the exceptions, that "the defendant also claimed that the pauper being a minor residing with his mother, was not subject to removal under the statute." No such question is presented by the defendant's plea. The allegation in the plea that the pauper " *was unduly removed*," and that "the town of Fairfield, defendant, is not chargeable with the support of said Hogaboon, pauper," is not an allegation of any traversable fact, but is only a legal conclusion from the allegation that " said town of Fairfield is not the last place of legal settlement of said Hogaboon." But, as the question has been argued without any allusion to the fact that the point is not embraced in the issue formed by the pleadings, the court are not inclined to dispose of the question upon this ground, as the plaintiff's counsel may have practically waived this objection in the county court by their silence. The simple fact that the pauper is still a minor, does not render him irremovable to the place of his legal settlement without the removal of his mother. Minor children whose tender age, or physical or mental weakness or condition, make it necessary that they should have the care, sympathy, and control of their parents, rendering it improper, upon the principles of humanity, that they should be separated, are irremovable from them, notwithstanding the general unqualified language of the statute. But the facts found are not sufficient to bring this ca.e within this exception.

The objection that the pauper being a minor, could not come to the town of Morristown to reside, within the meaning of the statute, does not appear to have been made in the county court; nor could it prevail if it had been raised, as it appears that when his father and mother removed there to reside, and commenced their residence there, the pauper was with them as part of the family.

Judgment affirmed.